IN THE DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

KENNITH ROTE,

    Plaintiff,

v.

UNUM LIFE INSURANCE COMPANY
AND UNUM GROUP,

    Defendants.

Civil Action No.

## COMPLAINT

Plaintiff, Kennith Rote, (hereinafter "Plaintiff") makes the following allegations against Defendants:

## JURISDICTION AND VENUE

1. This is an action for damages for failure to pay benefits under insurance policies that provide benefits to the Plaintiff under employee benefit plans that are subject to ERISA over which this court has jurisdiction pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

2. Venue is proper in the District Court for the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

3. Plaintiff's claims "relate to" "employee welfare benefits plan[s]" as defined by ERISA, 29 U.S.C. § 1001 et seq. and the subject benefit plans constitute "plan[s] under ERISA."

4. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted, and this matter is now properly before this Court for judicial review.

## PARTIES

5. Plaintiff is a resident of Ephrate, Pennsylvania.

6. Plaintiff was employed by VWR International, LLC in Radnor, Pennsylvania until becoming disabled and was covered under the VWR International, LLC Group Insurance Policy Long-Term Disability Plan, which provided long-term disability (LTD) benefits for Plaintiff and similarly-situated employees should they suffer a disability.

7. Plaintiff was also covered under the VWR International, LLC Select Group Insurance Trust which provided life insurance benefits for Plaintiff and similarly-situated employees should they suffer a disability and end of life.

8. Defendants Unum Life Insurance Company (hereinafter "Unum Life") and its parent company, the Unum Group Corporation (hereinafter "Unum Group"), are the parties obligated to determine eligibility for benefits under both insurance policies.

9. Unum Life is the party obligated to pay benefits under Group Long Term Disability Policy No. 141709 001 (hereinafter "the LTD Plan") issued by Unum Life to VWR International, LLC (hereinafter "VWR"). (Exhibit 1).

10. Unum Life is also the party obligated to pay benefits and to determine eligibility for benefits under the Select Group Insurance Trust Policy No. 292000, Identification Number 141709 002 (hereinafter the "Life Insurance Plan") issued by Unum Life to VWR. (Exhibit 2).

11. Plaintiff alleges upon information and belief that Unum Life may be served with process by and through its registered agent for service, Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203-1312.

12. Unum Group is the parent company of Unum Life and is principally located in Tennessee.

13. Unum Group exercises significant control over the policies and actions of Unum Life.

14. Unum Group is the employer of all persons who acted on behalf of Unum Life in regards to Plaintiff's claims.

15. Plaintiff alleges upon information and belief that Unum Group established the policies and procedures governing the payment or denial of claims, the policy for document retention, and other procedures under which the decision-makers made the decision to deny benefits that is the subject of this lawsuit and was the de facto decision-maker in the Plaintiff's claim (Unum Life and Unum Group will collectively be referred to as "Unum").

16. Plaintiff alleges upon information and belief that Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, at 2908 Poston Avenue, Nashville, TN 37203-1312.

## **FACTS**

17. Plaintiff was employed by VWR in its Pennsylvania location as a Data Center Operator.

18. VWR offers group LTD insurance and life insurance as an employee benefit pursuant to the LTD Plan and Life Insurance Plan, respectively.

19. Plaintiff is a participant or beneficiary of the LTD Plan.

20. Plaintiff has satisfied all the requirements and was eligible for LTD coverage under the LTD Plan.

21. LTD benefits due under the LTD Plan are insured by Insurance Policy No. 141709 001.

22. The Life Insurance Plan provides for Life Insurance benefits.

23. Life insurance benefits under the Life Insurance Plan were funded by Unum Life under the Life Insurance Plan issued by Unum to VWR.

24. Plaintiff was enrolled in coverage for $50,000 in life insurance benefits under the Life Insurance Plan.

25. The Life Insurance Plan provides that coverage is continued and Life Insurance Premiums will be waived if a participant becomes disabled while covered under the Life Insurance Plan. Such benefits are known as Life Waiver of Premium ("LWOP") benefits.

26. Plaintiff is a participant or beneficiary of both the LTD Plan and the Life Insurance Plan and is covered by the LTD Plan that provides LTD benefits and the Life Insurance Plan that provides LWOP benefits.

27. Plaintiff ceased work due to a disability on January 14, 2013, while covered under the LTD Plan for LTD benefits and the Life Insurance Plan for LWOP benefits.

28. Plaintiff suffers from severe back pain caused by foraminal narrowing, diffuse disc bulge, severe degenerative disc disease, osteoarthritis, central canal stenosis, posterior decompression, facet hypertrophy, disc osteophyte complex, spondylotic disease, radiculitis, neuritis, lumbago, and spondylosis.

29. Before becoming disabled, on December 2, 2011, Plaintiff had a fusion of the L2-L3 and L5-S1 vertebrae.

30. On April 24, 2013, Plaintiff had the hardware in the L2-L3 and L5-S1 joints removed and had a fusion of the L3-L4 and L4-L5 vertebrae.

31. Despite his surgeries, Plaintiff continues to suffer from back pain and numbness.

32. Plaintiff's treating neurologist, Dr. Louis A. Marotti, provided Unum with multiple reports from 2013 through 2018 which state that Plaintiff's back conditions will

continue to worsen and that Dr. Marotti does not believe Plaintiff will ever be able to work in any capacity.

33. Plaintiff also suffers from osteoarthritis and degenerative joint disease in both hips.

34. On November 18, 2013, Plaintiff had his left hip replaced.

35. Since January 14, 2013, Plaintiff has been and continues to be disabled as defined by the provisions of the LTD Plan and the Life Insurance Plan.

36. Plaintiff filed an application for LTD benefits on June 17, 2013.

37. Plaintiff was initially approved for LTD benefits on July 31, 2013, effective July 13, 2013.

38. Plaintiff was also initially approved for LWOP benefits on October 25, 2013.

39. Contemporaneous to his applications for employee benefits, Plaintiff also filed a claim for social security disability benefits. This claim was approved on January 17, 2015, and the Social Security Administration found him disabled as of January 9, 2013.

40. On October 7, 2014, Unum sent a representative to Plaintiff's home to observe his functional capacities.

41. In a claim note dated October 10, 2014, contained in the claim file provided to Plaintiff, Unum stated that the home visit supported the restrictions and limitations reported by Plaintiff and his treating physicians.

42. In a claim note dated October 15, 2015, contained in the claim file provided to Plaintiff, Unum stated, "EE has polyarticular arthritis which affects spine and peripheral joints. Given this is chronic and degenerative, and AP noting that EE will always require narcotic pain. PV was conducted and there is no indication from PV that EE has more sustainable capacity than

5

reported. Based on this information, would agree that EE would not have sustainable functional capacity for any level of sustained functional capacity and given nature of condition, this is likely ongoing."

43. Per a claim note dated December 15, 2015, contained in the claim file provided to Plaintiff, Unum transferred Plaintiff's claim to a special financial settlement unit.

44. Per a claim note dated December 16, 2015, contained in the claim file provided to Plaintiff, Unum stated that, because Plaintiff's claim would likely be paid until the maximum benefit time under the Policy, Plaintiff should be considered for a settlement offer.

45. Per a claim note dated January 7, 2016, contained in the claim file provided to Plaintiff, Unum declined to settle Plaintiff's case, because Plaintiff's life expectancy was shorter than his maximum benefit duration under the LTD Plan.

46. Per a claim note dated February 1, 2017, contained in the claim file provided to Plaintiff, Unum stated, "Based on all current information with medical on file; it would appear that you would not have sustainable social [sic?] capacity to return to work at this time."

47. Despite receiving multiple opinions from Dr. Marotti that Plaintiff's conditions were severe, progressive, and permanent (opinions that Unum's own internal doctor agreed with), Unum sent Dr. Marotti a pre-filled form asking Dr. Marotti to confirm Unum's provided restrictions that were inconsistent with Dr. Marotti's prior opinions. Dr. Marotti's office returned the form with a check mark and signature.

48. Plaintiff was paid LTD benefits until May 24, 2018, when his benefits were cut off by Unum.

49. Plaintiff's LWOP benefits were terminated on May 29, 2018.

50. Plaintiff timely appealed the denial of his LTD benefits and LWOP benefits by letter dated June 28, 2018.

51. With this appeal, Plaintiff submitted a letter from Dr. Marotti which stated that Plaintiff was "permanently disabled from any and all gainful employment due to severe advanced degenerative changes above and below his previous fusion up to L1 and down to S1."

52. Unum's file-reviewing doctor then wrote a report which agreed with the one contradictory report from Dr. Marotti's office.

53. Without ever speaking to Dr. Marotti, Unum denied Plaintiff's appeal and stated that their decision was final by letter dated October 8, 2018.

54. Plaintiff has exhausted his administrative remedies under the LTD Plan and the Life Insurance Plan.

55. Unum would pay any LTD benefits and LWOP benefits due out of its own funds.

56. Unum owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

57. Unum was under a perpetual conflict of interest because Plaintiff's benefits would have been paid out of its own funds.

58. Unum allowed its concern over its own funds to influence its decision-making.

59. When Unum denies a claim before all of the contractual benefits are paid, Unum internally refers to that as a "recovery".

60. Unum's conflict of interest and bias is evidenced by the fact that it establishes monthly financial targets that are reached by denying claims whose monetary reserve amounts would cumulatively meet those targets.

61. The monthly financial targets for denying claims are called "recovery plans" or similar words.

62. The monthly targets, or "recovery plans," include the dollar amounts to be reached in terms of reserves on denied or "recovered" claims and the count of total claims that should be recovered.

63. These recovery plans are given by Vice Presidents (often through the Vice President's administrative assistant) in the claims department to the Assistant Vice Presidents in writing and verbally.

64. The Vice Presidents also give the Assistant Vice Presidents a list of claims that have been identified as potential recoveries. This list includes the names of individual insureds and the reserve amount associated with the claims of those insureds.

65. The list of claims that are potential recoveries, including the reserve amounts, is transferred from the Vice Presidents to the Assistant Vice Presidents by hard copy paper.

66. The recovery plans and the list of potentially recoverable claims provided to the Assistant Vice Presidents are disseminated by the Assistant Vice Presidents to the Directors they supervise and are used by the Assistant Vice Presidents to coach or supervise their Directors.

67. Directors at Unum are the employees who ultimately make the decision to approve or deny claims for benefits.

68. The recovery plans and the list of potentially recoverable claims that are given to the Assistant Vice Presidents are passed on to Directors verbally, so there will be no record of the Directors being told their monthly financial targets of "recoveries" or denied claims.

69. After the Assistant Vice Presidents pass on the recovery plans and the list of potentially recoverable claims to the Directors, the Assistant Vice Presidents shred the documents that contained the names of individual insurers and their reserve amounts.

70. The Directors use this information, and the targeted financial amounts, to guide them and the claims handlers under them to deny meritorious claims in order to meet the recovery plan for their team.

71. To receive bonuses under Unum's incentive program, Unum's employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (Exhibit 3, ID Director Scorecards).

72. Internal documents reveal that targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (denying an open claim) per day. (Exhibit 4, Weekly Tracking Reports).

73. In his recent deposition, Anthony Scuderi—who was an Assistant Vice President with Unum—confirmed that Unum continues to target individual claims for their value— testifying that his supervising Vice President would provide him with printed sheets that included the names and financial reserve value of claimants each month; he would copy the information in those sheets onto a spreadsheet on his personal computer; he would then verbally disseminate that information to the Directors he supervised; he would shred the paper document; and he would report back to his supervising Vice President periodically on the progress of meeting the "paid recovery" metric. (Exhibit 5, selected excerpts from the deposition of Anthony Scuderi). He testified that he believed this was the common practice of all Unum's Assistant Vice Presidents. *See Id*.

74. Unum's claims and appeals units were provided the targets for claim closures and uphold decisions and then were provided the specific claims that would meet those expectations.

75. Paul Peter, another former Assistant Vice President for Unum, testified that he received the recovery plan each month from his supervising Vice President, Maureen Griffin, and that he passed this information down to the Directors he supervised. (Exhibit 5, selected excerpts from the deposition of Paul Peter). Paul Peter also testified that he received the list of claims that were identified as potential recoveries, which included the names of the claimants and the reserve amount associated with each claim. *See Id*. Paul Peter confirmed that he and the Directors he supervised were graded and held accountable for meeting the "recovery plan," and he impressed upon his Directors the importance of meeting the planned numbers. *See Id*. at 29-30.

76. Unum's targeting of Plaintiff's claims for denial taints all evidence it developed during the review of his claims as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

77. Unum breached its fiduciary duties to Plaintiff, including the duty of loyalty.

## FIRST CAUSE OF ACTION
## FOR LONG TERM DISABILITY PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

Plaintiff incorporates the allegations contained in the above paragraphs as if fully stated herein and says further that:

78. Under the terms of the LTD Plan, Unum agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the LTD Plan.

79. Plaintiff is disabled and entitled to benefits under the terms of the LTD Plan.

80. Unum failed to provide benefits due under the terms of the LTD Plan, and this denial of benefits to Plaintiff constitutes a breach of the LTD Plan.

81. Unum's decision to deny benefits was wrong under the terms of the LTD Plan. Unum's decision to deny benefits and decision-making processes were arbitrary and capricious.

82. Unum's decision to deny benefits was influenced by its financial conflict of interest.

83. Unum's decision to deny benefits was not supported by substantial evidence in the record.

84. As a direct and proximate result of Unum's failure to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled under the LTD Plan.

85. As a direct and proximate result of Unum's failure to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer, damages under the LTD Plan plus interest and other damages for a total amount to be determined.

## SECOND CAUSE OF ACTION
## FOR LIFE INSURANCE PLAN BENEFITS AGAINST THE DEFENDANTS
## PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

Plaintiff incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

86. Under the terms of the Life Insurance Plan, Unum agreed to provide Plaintiff with LWOP benefits in the event that Plaintiff became disabled as defined by the Life Insurance Plan.

87. Plaintiff is disabled and entitled to benefits under the terms of the Life Insurance Plan.

88. Unum failed to provide benefits due under the terms of the Life Insurance Plan.

89. Unum failed to provide benefits due under the terms of the Life Insurance Plan, and this denial of benefits to the Plaintiff constitutes a breach of the Life Insurance Plan.

90. The decision to terminate benefits was wrong under the terms of the Life Insurance Plan.

91. The decision to terminate benefits and decision-making processes were arbitrary and capricious.

92. The decision to deny benefits was not supported by the substantial evidence in the record.

93. As a direct and proximate result of the aforementioned conduct of Unum in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which he would have been entitled under the Life Insurance Plan.

94. As a direct and proximate result of the aforementioned conduct of Unum in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Life Insurance Plan, plus interest and other damages, for a total amount to be determined.

## **PRAYER FOR RELIEF**

**Long-Term Disability Benefits**

On Plaintiff's first cause of action, Plaintiff requests that this Court grant him the following relief in this case:

1. A finding in favor of Plaintiff against the Unum;

2. Damages in the amount equal to the disability income benefits to which he was entitled through the date of judgment under the LTD Plan, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and postjudgment interest;

4. An Order requiring the LTD Plan or appropriate LTD Plan fiduciaries to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the LTD Plan, as well as any other collateral benefits to which he might be entitled on the basis of being disabled under the LTD Plan.

5. Plaintiff's reasonable attorney fees and costs; and

6. Such other relief as this court deems just and proper.

**Life Waiver of Premiums**

On Plaintiff's second cause of action, Plaintiff requests that this Court grant him the following relief in this case:

7. A finding in favor of Plaintiff against Unum;

8. An Order requiring the Life Insurance Plan or appropriate Life Insurance Plan fiduciary to reinstate his life insurance benefits and pay continuing benefits in the future so long as Plaintiff remains disabled under the Life Insurance Plan.

9. Plaintiff's reasonable attorney fees and costs;

10. Such other relief as this court deems just and proper.

Dated this 14th day of March 2019.

Respectfully submitted,

                ERIC BUCHANAN & ASSOCIATES, PLLC
                ATTORNEYS FOR PLAINTIFF

            BY:    */s/ Hudson T. Ellis*
                      Hudson T. Ellis (Tenn. Bar #28330)
                      414 McCallie Avenue
                      Chattanooga, TN 37402
                      (423) 634-2506
                      FAX: (423) 634-2505
                      ellish@buchanandisability.com